Walter Lee OVERTON, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.
Dec. 20, 1974.

Certiorari Denied by Supreme Court
March 24, 1975.

Jean V. Humphrey, Legal Aid Clinic, Knoxville (Court-appointed), for plaintiff-in-error.

David M. Pack, Atty. Gen., Wm. C. Koch, Jr., Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, for defendant-in-error.

## OPINION

OLIVER, Judge.

Represented by appointed counsel (the University of Tennessee Legal Aid Clinic) at all stages of this prosecution, defendant perfects his appeal in the nature of a writ of error to this Court. He stands convicted of second degree burglary (TCA § 39–903) and has been sentenced to a term of not less than three years nor more than five years in the penitentiary as punishment for this offense.

Defendant was convicted of second degree burglary arising out of the breaking into of the apartment of Ben Cobb in Knoxville, Knox County, on June 20, 1973, between the hours of 10:00 a. m. and 1:00 p. m. Mr. Cobb left his home on that morning between the hours of 9:00 and 10:00 a. m., after ascertaining that the doors were locked. As he was leaving he saw a man, whom he later identified as the defendant, standing on the sidewalk three or four feet from his front door. He said "Good morning," and the man replied, "Good morning, is that where you live?" Mr. Cobb stated that he lived there and walked down the street to the bus stop. He returned home in a couple of hours and found that his apartment had been broken into and a .38 pistol, a watch, and $80 in cash had been taken from the apartment. It was determined that entry to the apartment was made through a window which had been broken.

The police investigated and Mr. Cobb described the man who was standing outside his home as black, wearing a dark ball cap and jeans with white paint on the legs. Around 2:00 o'clock that afternoon the investigating officers were driving down the street about six or eight blocks from the

site of the burglary. They saw a man answering the description given them by Mr. Cobb, who turned out to be the defendant. He was walking down Cavalier Street and when he noticed the police car he turned sharply and went at a fast walk into the front yard of a Mr. Bradley. He went onto the porch of the house, laid down behind the chair in which Mr. Bradley was sitting and placed something into the seat of the chair behind Mr. Bradley. As the officers approached the house, the defendant got up and started to walk out of the yard. One of the officers stopped him and asked him his name. The other officer approached Mr. Bradley on the portch and asked him if the defendant left anything on the porch. Bradley replied that he did and the officer picked up the gun. Bradley claimed that this was the first time that he had seen the defendant that day. The serial number on the gun matched the serial number of the gun stolen from Mr. Cobb that morning. Mr. Cobb later identified the gun as his.

The officers later took a statement from the defendant which parallels closely his testimony at the trial. He testified that he was on Kyle Street (where Mr. Cobb lived) on the morning in question, talking to a Mr. Ward who lived two doors down from Cobb. He was on Ward's back porch and never went inside his house. As he was leaving, he saw Miss Jackson, Cobb's next door neighbor, standing by her back door. He had not seen this lady in about 20 years and went into her apartment and talked for five or 10 minutes. He then left, walking across the parking lot behind the apartments to Olive Street and down Olive Street to McConnell.

When he got to the corner of McConnell and Olive, he saw a man who called his name and asked him if he had $20. He went over to the man, whom he did not know, and asked him what he wanted $20 for. The man showed him a pistol which he offered for sale and the defendant talked him down to $12.50. The man said that he would meet Overton later that night and buy the gun back from him. Some men that Overton knew were on a KUB truck nearby and he talked to them for a short while. Joshua Nero, testifying for the defense, said that he was one of the men in the KUB truck; that he saw the defendant buy the gun from a man on the street and talked shortly with the defendant at the time. He was at the time of the trial incarcerated for larceny and shared a cell with the defendant.

Overton, the defendant, stated that after he had bought the gun, he went down Chestnut Street and played some horseshoes and checkers. Upon seeing Mr. Bradley sitting on his front porch, he bought a half pint of whiskey, went over to Bradley's house and they had a drink. He was leaving Mr. Bradley's house when he saw the police car. He was afraid that the police might shake him down and find the gun, so he returned to Bradley's porch and placed the gun on the seat where Bradley was sitting. The police stopped, found the gun, and arrested him.

He claimed he was never in front of the apartments on the day in question and that he never saw nor spoke to Cobb at any time.

■ It is, of course, well settled that a defendant attacking, as this defendant does, the sufficiency of the evidence to convict him bears the burden of showing, by a preponderance of the evidence, that the jury verdict was erroneous. Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799 (1967) and cases cited therein.

Defendant's first Assignment of Error generally attacks the sufficiency of the evidence. His second Assignment of Error more specifically attacks his conviction on circumstantial evidence because, he claims, the evidence does not exclude every other reasonable hypothesis except that of guilt and was not inconsistent with his innocence. We address ourselves to these Assignments.

The rule in Tennessee is that to warrant a conviction on circumstantial evidence alone, "the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime." Pruitt v. State, 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 390 (1970). The determination of whether all other reasonable theories are excluded by the evidence presented is primarily a question of fact for the decision of the jury. Marable v. State, 203 Tenn. 440, 313 S.W.2d 451; Pruitt v. State, supra; Sotka v. State, 503 S.W.2d 212 (Tenn.Cr.App.1972).

In the instant case a man answering the description of the defendant, and who was later identified as the defendant, was on the sidewalk in front of the house where the burglary occurred shortly before it took place. He spoke to the owner of the burglarized apartment and asked him if he lived there. He was discovered very soon after the burglary with fruits of the crime in his possession. See Pruitt v. State, supra; State v. Clark, 438 S.W.2d 277 (Mo. S.Ct.1969). Upon discovery by the police, he attempted to hide the gun he had stolen and attempted to evade the police. See Sotka v. State, supra.

Although he offered an explanation for his possession of the gun stolen from the Cobb apartment, obviously the jury rejected his story as spurious. Of course it is fundamental that the jurors are the sole and only judges of the evidence, and of the weight to be given to the swearing of each and every witness in the case. The credibility of the witnesses, the weight and value of their testimony, the inferences to be drawn from their statements, and all factual issues raised by the testimony and evidence introduced—direct and circumstantial, are matters entrusted exclusively to the jury as the triers of the facts. Bailey v. State, 479 S.W.2d 829 (Tenn.Crim.App.) and cases therein cited.

We cannot say that the jury was not fully justified in reaching the verdict which they did. Certainly, the evidence does not preponderate against it. The first and second Assignments are overruled.

Defendant has also assigned as error that the charge given the jury as to proof by circumstantial evidence was insufficient. Particularly, the defendant contends that the judge failed to charge the jury that the evidence must be inconsistent with the innocence of the defendant.

The charge given to the jury in this case, as it relates to proof by circumstantial evidence, was as follows:

"The guilt of the accused as well as any fact required to be proven may be established either by positive or circumstantial evidence, or both combined. The proof is positive when a witness speaks directly to a fact from observation of his or her own personal knowledge, and it is circumstantial or presumptive when the crime is not proved by direct evidence or the evidence of a person who saw the crime committed, but is to be inferred from circumstances which necessarily or usually attend such facts.

"In a circumstantial evidence case the evidence is tested by the following rules:

"(1) It should be acted upon with caution; (2) all the essential facts must be consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; (3) *the facts must exclude every other reasonable theory or hypothesis except that of guilt;* and (4) the facts must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the accused is the one who committed the offense.

"It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury, beyond a reasonable doubt, of all the facts necessary to constitute the crime charged. Before a verdict of guilty is justified, the circumstances taken together, must be of a conclusive nature and tendency, leading on the whole, to a satisfactory conclusion and producing in effect a moral certainty that the accused and no one else, committed the offense." (Emphasis supplied).

This charge, with the exception of the first paragraph, is word for word from the opinion of the Supreme Court of this State in Marable v. State, 203 Tenn. 440, 313 S. W.2d 451. The quote originated in Volume 2 of Wharton's Criminal Evidence, a noted treatise on the subject, and has been specifically approved by this Court in Pruitt v. State, supra. We feel that the emphasized portion of the charge fully and fairly covers the aspect of circumstantial proof complained of by the defendant.

 Also, a review of the Bill of Exceptions in this case reveals that, when asked at the close of the charge, if she had any special requests for further instructions, defendant's counsel replied that she did not. In Cook v. State, 506 S.W.2d 955 (Tenn.Cr.App.1973), this Court quoted 23A C.J.S. Criminal Law § 1325(1) as saying:

"As a general rule, where the court has instructed generally as to the issues, if accused desires a particular instruction, or an instruction upon a particular phase of the case, he should submit it with a proper request that it be given, otherwise a failure to give it is not error, unless a statute or a positive rule of law requires the giving of such instruction; and the failure to request instructions on any particular point, not basic or fundamental, is regarded as a waiver of the right to such instructions and acquiescence in the omission. This is particularly true where the charge given covers the facts of the case and states the law applicable thereto, presents the case fairly, and guards the substantial rights of accused."

See also TCA § 40–2517 as to the requirement of special requests in criminal prosecutions, which was not complied with.

Since the requisites for a conviction upon circumstantial evidence were covered in the trial judge's charge, the defendant cannot now complain that a more extensive charge was not given, since he failed to timely request such a supplementary charge. Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892.

All Assignments of Error being without merit, the judgment of the trial court is affirmed.

DWYER and RUSSELL, JJ., concur.