James Brake PROCTOR, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Feb. 26, 1978.

Certiorari Denied by Supreme Court May 22, 1978.

William C. Wilson, Nashville, for appellant.

Brooks McLemore, Jr., Atty. Gen., William O. Kelley, Asst. Atty. Gen., Nashville, Elmer Davies, Dist. Atty. Gen., Franklin, for appellee.

## OPINION

FRANK F. DROWOTA, III, Special Judge.

This is an appeal by defendant James Brake Proctor from a judgment of the Hickman County Criminal Court, in which he was convicted of armed robbery and of being an habitual criminal. Defendant was sentenced to 65 years in prison for the armed robbery, while a life term was imposed on the habitual criminal conviction as T.C.A. § 40–2806 requires. Defendant was tried and convicted along with a co-defendant, Jerry Wayne Stewart, whose appeal we address in a separate opinion.

The armed robbery of which defendant Proctor was convicted occurred on the evening of October 26, 1974, at a store run by a 74-year old lady, Mrs. Faira Jane Foriest, and her son, James Martin Foriest, Jr. Two men, wearing ski masks and armed with pistols, robbed the store of an amount of money estimated at $15,000.00 by James Foriest and at $30,000.00 by his mother. Most of the money was stored in a green tackle box, which was also taken. The robbers forced their victims from the store to an adjacent house, in which the Foriests lived. James Foriest remained at the house during the entire robbery and never got a very good look at the two criminals. His mother, however, was taken by one of the men back down to the store, where she was able to see the other man without his mask. When the robbers had taken what they wanted, they tied up the Foriests and left them in the house. Within a few minutes, James Foriest managed to free himself and his mother, and they called the Sheriff to report the robbery.

James Foriest was able to give no details concerning the appearance of the two men, other than that they wore masks and "kinda heavy like coats" and that one was about five feet ten inches tall. Mrs. Foriest, however, did give the Sheriff a somewhat more detailed description of the man she had seen with his mask off. The description was of a white male, 30 years old or more, five feet ten inches tall, about 150 lbs., of slender build with a slim face, a pale complexion, and black hair parted on the left and combed to the right. Mrs. Foriest also said that the man wore a dark three-quarter length coat that was big and loose, and carried a blue steel pistol. She also furnished police with a less detailed description of the second robber.

In the several months following the robbery, Mrs. Foriest was shown approximately 600 "mug shot" photographs, but was unable to identify anyone whose picture she saw as the robber. Then, evidently as a result of information supplied by an agent of the Tennessee Bureau of Criminal Identification, defendant Proctor became a suspect in the case. The Sheriff, Frank Atkinson, arranged for Mrs. Foriest to go to the court house in Columbia, where defendant was being tried on another charge, to see if she could identify anyone. On May 23, 1975, after twenty minutes of scrutinizing about forty people present in the courtroom, Mrs. Foriest identified defendant Proctor as the robber she had seen without his mask.

Subsequent to his being identified by Mrs. Foriest, defendant was indicted for the armed robbery and for being an habitual criminal. He was tried with his co-defendant Jerry Stewart on August 28, 29 and 30, 1975.

At trial, the State first presented testimony of the Foriests and Sheriff Atkinson concerning the robbery and the description of the criminals given by Mrs. Foriest at the time. Mrs. Foriest also made an in-court identification of defendant Proctor as the robber whose face she had seen on the night of the crime.

Next came the important testimony of Terry Lee Stewart, the brother of defendant Proctor's co-defendant Jerry Stewart.

Terry Stewart testified that his brother Jerry and defendant Proctor had carried out the robbery of the Foriests on October 26, 1974. He said that he had heard the other two discuss the possibility of robbing the store prior to that date, and that his brother had told him of definite plans to do so on the day before the robbery. On October 26, according to the witness, he and his brother and defendant Proctor had set out from Nashville. When they arrived at the store, they drove past, and found a place to park in front of a vacant house. The witness then drove the other two men to a point about a half a mile from the store and let them out. Defendant Proctor was carrying a blue steel .38 pistol, and was dressed in brown pants, a brown shirt, and a brown waist jacket something like a windbreaker. Following the instructions he had been given, Terry Stewart drove back to the vacant house and waited for his two companions. When they returned, defendant Proctor was carrying a green tackle box. Terry Stewart then drove the three back to Nashville. During the trip, the tackle box was emptied and thrown out alongside the road. According to Terry Stewart, the amount of money taken was $30,000.00, of which he was given $2,000.00 while his brother and defendant Proctor took $14,000.00 each.

Terry Stewart also testified on cross-examination that he had been in trouble with the law since the robbery. He said that, while he had made no deal with police, he believed he would be treated more leniently as a result of his cooperation in testifying.

For the defense, the father of Terry Stewart testified that Terry had told him that he might "have to tell—anything that I have to tell to get out of this." Defendant Proctor testified that he had given up his life of crime prior to the date of the robbery, and denied any involvement in it. He said that he and his new wife had bought a store in Huntsville, Alabama, and that he had been at the store at the time of the robbery. Several witnesses, including Proctor's wife and sister-in-law, testified in support of this alibi.

After hearing the evidence, the jury found defendant Proctor guilty of armed robbery and fixed his sentence at 65 years in prison. A brief trial was then held on the habitual criminal charge, and several of defendant's prior convictions were documented. The jury then found defendant guilty of being an habitual criminal and sentenced him to life in prison. Defendant's appeal has now reached this Court.

In his first assignment of error, defendant Proctor contends that he was "subjected to an identification procedure so suggestive and conducive to mistaken identity that [he] was denied due process of law." He argues that testimony concerning Mrs. Foriest's identification of him in the Columbia courtroom was improperly admitted, and that her identification of him at the trial of the instant case should also have been excluded because it was tainted by the earlier one.

■ We note initially that this case does not involve the Sixth Amendment or rules governing identification procedures as set out in *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The right to counsel and the rules of those cases apply only to identification procedures conducted after indictment. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The disputed identification in the instant case occurred prior to defendant's indictment.

■ A violation of due process, however, may occur in a suggestive identification procedure even in the earliest stages of a criminal investigation. In deciding whether or not there has been a violation, the court must view the "totality of the circumstances." *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Due process has been violated if the court finds that the identification procedure was so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Such a finding would require

exclusion of a subsequent in-court identification by the same witness. With the word "irreparable" deleted, the quoted test also serves "as a standard for the admissibility of testimony concerning the out-of-court identification itself." *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972).

In *Neil, supra,* the U. S. Supreme Court described in detail the approach to be taken in measuring out-of-court identification procedures against due process requirements. The Court set out five factors to be considered in determining whether an identification is reliable enough to withstand a due process attack despite suggestiveness in the procedure employed. These factors are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation. The degree of reliability in the identification itself, as indicated by these factors, is to be assessed in light of the suggestiveness of the identification procedure and the totality of the circumstances to determine whether a violation of due process has occurred. This approach has been applied in prior Tennessee cases. See *Forbes v. State,* 559 S.W.2d 318 (Tenn.1977); *Bennett v. State,* 530 S.W.2d 511 (Tenn.1975).

*Stovall* and *Neil* both upheld against due process attack on their particular facts identifications made in a procedure known as a "show-up," wherein the suspect is shown to the witness alone rather than in a group or "lineup." In the recent case of *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court found no violation of due process when, in the particular circumstances of that case, an out-of-court identification was made from the witness's viewing of a single photograph of the defendant. The Court reaffirmed the approach of *Neil,* with its focus on reliability, and made clear that that approach is to be applied whether the out-of-court identification took place before *Stovall* or after it.

■ In the instant case, the "out-of-court" identification complained of by defendant took place in a courtroom, where defendant was being tried on a charge separate from that involved here. The record does not tell us why this procedure was used instead of the standard "lineup." Defendant argues that the setting for this identification was suggestive because the identifying witness, Mrs. Foriest, was told beforehand that the person she had been brought to identify was the one on trial in the courtroom. The only support in this record for the contention that the witness had such knowledge is in her testimony that "the Sheriff asked me in May to go with him to Columbia to identify—to see if I could identify anybody that was being tried up there." Also, on cross-examination, the following exchange took place:

Q. But you were told that his man was going to be down there on trial, weren't you?

A. Well yes, it was going to be somebody down there on trial.

Mrs. Foriest's confusion on this point, however, is illustrated by another exchange on cross-examination:

Q. Just what did the Sheriff tell you before you were carried down there?

A. He asked me would I go up there and see if I could identify anybody that had robbed me and I made arrangements and I told him yes, I'd go.

Q. All right, it seems I remember on your direct-examination that somebody was being tried?

A. Well he was being tried.

Q. Yes, Mam, well did he say he was going to be tried that day, the Sheriff?

A. Well I think he did.

At yet another point in her direct examination, however, Mrs. Foriest testified that she was *not* told that the person on trial was the suspect:

Q. And what did the Sheriff tell you about where he'd be?

A. He just said he will be in the Court Room and it took me as much as twenty minutes to discover him . . . ..

In his testimony, the Sheriff emphatically stated that he did not tell Mrs. Foriest that the suspect was on trial:

Q. Did you say anything about this suspect being on trial in any way?

A. I most certainly didn't, I said they'll be having a trial but I said the suspect would be somewhere in the Court Room, but I didn't tell her that he would be on trial.

The rest of the circumstances surrounding this out-of-court identification are clear and simple. Mrs. Foriest was brought into the courtroom by the Sheriff and another officer. They took seats a few rows from the back. The courtroom contained about forty people, with people coming and going during this time. Mrs. Foriest looked at numerous people, including members of the jury, in various parts of the courtroom. She took such a long time that the Sheriff thought that she was not going to be able to recognize defendant. Finally, after about twenty minutes, Mrs. Foriest called the Sheriff over and pointed out defendant, sitting at the defense table at the front of the courtroom, as one of the men who had robbed her.

Were it not for the confusing testimony of Mrs. Foriest as to whether or not she knew that defendant was the one on trial before she identified him, there would appear to be little suggestiveness in asking her to see if she could identify anyone in a room of forty people. Even with her confusing testimony in the record, the certainty of the Sheriff's testimony, coupled with Mrs. Foriest's having scrutinized people all over the courtroom and having taken twenty minutes to identify defendant, indicates that she did not know ahead of time that the suspect was on trial or where she should look for him. Nevertheless, because the circumstances under which this identification was made may have suggested to Mrs. Foriest's mind that defendant was the suspect she was expected to identify, we proceed to examine her identification according to the *Neil* factors of reliability.

There is no doubt that Mrs. Foriest had sufficient opportunity to view the criminal at the time of the crime, for she saw him with his mask off in a well-lighted store. Nor is there any reason to suspect that she did not pay a high degree of attention at that time, for it was her only good opportunity to view the criminal closely enough to be able to assist the police in arresting him. She had been threatened but not struck, and the record does not show her to have been unduly distraught or distracted at the time.

The third factor is the accuracy of the witness's prior description. The description given police at the time of the crime by Mrs. Foriest admittedly does not fit defendant perfectly. She said that the man she saw with his mask off had a pale complexion, while there is evidence in the record to indicate that defendant is ruddy-complected. Also her description of a big three-quarter length coat differs from Terry Stewart's testimony that defendant wore a "waist coat" or "windbreaker." Terry Stewart testified that defendant's hair was combed back at the time of the robbery, while Mrs. Foriest's description said that it was parted. Such a feature, however, is easily altered at any time. Furthermore, some of the alleged inaccuracies in Mrs. Foriest's description are not in fact inconsistent with defendant's appearance. Mrs. Foriest estimated defendant's age at 30 or more, and according to his own testimony defendant is 48. Mrs. Foriest approximated defendant's weight at 150 lbs., not far from the 135 lb. figure to which defendant testified. Finally, several elements of Mrs. Foriest's description are not shown by anything in the record to be inaccurate. These elements are that the criminal was a white male about five feet ten inches tall with a slender build, a slim face and black hair. Overall Mrs. Foriest's description, while not perfect, is accurate enough to be consistent with the proposition that the man she saw and described at the time of the crime was defendant, and that her out-of-court identification was based upon the earlier viewing and was therefore reliable.

The fourth factor, level of certainty of the witness at the confrontation, causes no

problem in the instant case. Mrs. Foriest pointed out defendant in the Columbia courtroom with no apparent uncertainty. At trial, Mrs. Foriest testified that she could not forget defendant's face:

Q. Did you give the Sheriff a description of the man that you saw with the mask off?

A. Well to some extent I did, I told him that I'd know his face if I ever seen it. I go to bed at night with that face in my mind and I wake up of a morning and I can see that face. Anybody pushed you around with a gun like they did and get as much as you worked hard for you will never forget a face like that.

The final factor to be considered is the length of time between the crime and the identification, in this case about seven months. A similar amount of time was not found to be excessive in *Neil.* In that case, the Court said that the seven-month period would have been considered a "seriously negative factor," 409 U.S. at 201, 93 S.Ct. 375, except that the witness had demonstrated her resistance to any suggestiveness inherent in the show-up procedure by viewing other suspects under similar conditions and failing to make an identification. While Mrs. Foriest had not, prior to identifying defendant, viewed a suspect under the same circumstances as those of the Columbia courtroom, she had viewed in excess of 600 photographs without identifying anyone. As far as the Sheriff and Mrs. Foriest know, none of the photographs examined depicted defendant. In view of this and of the certainty with which Mrs. Foriest stated that she remembered defendant's face, we cannot say that the lapse of seven months between the crime and the identification makes the latter unreliable.

Viewing the totality of the circumstances, then, we find Mrs. Foriest's identification of defendant to be sufficiently reliable under *Neil* to withstand a claim that the procedure employed violated defendant's right to due process of law. In addition to the five factors discussed above, we think it significant that any suggestiveness here was less than that inherent in the one-to-one show-up involved in *Neil* and other due process cases. Defendant was one of approximately forty people in the room and, according to the weight of the evidence, Mrs. Foriest was not told where to look for him. That she was not told is supported by her careful search of the faces of those present for twenty minutes before locating and identifying defendant. As for reliability, none of the five factors of *Neil* militates in favor of the conclusion that Mrs. Foriest's identification was unreliable for due process purposes. The inaccuracies in her original description of defendant and the lapse of seven months before the identification, while certainly elements for the jury to consider in evaluating the correctness of the identification and the strength of the State's case against defendant, are insufficient to sustain defendant's constitutional attack on the identification procedure under existing law. Accordingly, we hold that Mrs. Foriest's out-of-court identification of defendant in the Columbia courtroom was not made under conditions constituting a violation of due process of law, and that evidence of that identification, as well as of her in-court identification, was properly admitted. The first assignment of error is overruled.

In his second assignment of error, defendant contends that the trial court erred in refusing to grant him a new trial on the ground that he was convicted on the uncorroborated testimony of an accomplice, Terry Stewart. Stewart, who by his own testimony was in on the robbery's planning and drove the "get away" car, was clearly an accomplice.

■ A conviction may not be had on the uncorroborated testimony of an accomplice. *Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34 (1964); *Marshall v. State,* 497 S.W.2d 761 (Tenn.Cr.App.1973). While corroborative evidence must consist of some fact specifically linking the defendant to the crime and testified to independently of the accomplice's testimony, it need not be adequate in and of itself to support conviction. *Henley v. State,* 489 S.W.2d 53 (Tenn. Cr.App.1972). In the instant case, Terry

Stewart's testimony that defendant committed the robbery is corroborated by Mrs. Foriest's in-court identification of defendant and by the testimony concerning her out-of-court identification, both of which we have ruled admissible. Defendant, however, argues that the discrepancies between the testimony of Mrs. Foriest and of Stewart as to defendant's appearance render Mrs. Foriest's testimony inadequate to corroborate Stewart's. While some inconsistencies do exist and could properly be considered by the jury as to the weight of the evidence, they are not sufficient to destroy the corroborative value of Mrs. Foriest's testimony. The crucial corroborative element of that testimony is Mrs. Foriest's positive identification of defendant Proctor as one of the robbers. This identification was properly admitted into evidence, and it is more than sufficient to corroborate the testimony of the accomplice Stewart. The second assignment of error is overruled.

The third and final assignment of error contains defendant's contention that the evidence preponderates in favor of his innocence. It is fundamental that the weight and credibility of testimony are to be determined by the jury. *Withers v.* *State,* 523 S.W.2d 364 (Tenn.Cr.App.1975); *Overton v. State,* 521 S.W.2d 229 (Tenn.Cr. App.1974). Basically, the evidence in the instant case consisted of diametric opposites: eyewitness testimony by Stewart and Mrs. Foriest that defendant committed the crime, and alibi testimony by defendant and other defense witnesses. The jury obviously chose to believe the State's witnesses, as is their prerogative in such cases. The State's testimony, thus accredited by the jury, clearly establishes defendant's guilt. Accordingly, defendant cannot show that the evidence preponderates against the verdict, and this final assignment of error is overruled.

The judgment of the trial court is affirmed.

Affirmed.

TATUM and BYERS, JJ., concur.