STATE of Tennessee, Appellee,

v.

Gary James DONALD, Appellant.

Court of Criminal Appeals of Tennessee, Knoxville.

Oct. 15, 1980.

Permission to Appeal Denied by Supreme Court Jan. 15, 1981.

K. D. McCasland, Jr. and Roger D. Moore, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, William H. Crabtree, John W. Gill, Jr., Asst. Dist. Attys. Gen., Knoxville, for appellee.

## OPINION

JOHN D. TEMPLETON, Special Judge.

Gary James Donald was convicted of murder in the first degree and sentenced to life imprisonment. We resolve against him all of the issues raised on appeal and affirm the judgment.

The first issue is whether the evidence was sufficient to support guilt. We outline the facts as disclosed by the state's proof.

Late in the afternoon of September 28, 1978, a young female drifter was in the Knoxville area and had been picked up by appellant. They traveled in his car to a remote wooded place in Knox County where he stabbed her to death. When found she was nude and had been stabbed 111 times. However, she had not been sexually molested or robbed. Two persons happened to be in the woods at the time and although they did not see the murder they heard appellant's car arrive and soon thereafter heard sounds of conflict, including the cries of the

girl pleading for her life. They fled and with others soon returned to investigate. On the way back to the scene they met appellant leaving the area in his car. The road on which they met appellant was the only entrance to and exit from the scene and he was the only person in there at the time. Appellant went home and burned his clothes. A search of the car revealed the girl's fingerprint and some personal items she had discarded. After arrest he admitted he picked up the girl, took her to the scene, and stabbed her. The state's proof was overwhelming and there really was no doubt appellant committed the crime. We find the evidence was sufficient to find appellant guilty beyond a reasonable doubt of murder in the first degree.

■ Appellant insists his motion for a continuance should have been granted. The judge allowed 20 state witnesses to be added to the list 12 days before trial and appellant claims he did not have adequate time to interview them. It is not shown any of these witnesses were used or if they were then in what way their testimony prejudiced appellant. We see the judge carefully allowed counsel to interview witnesses not already interviewed before proceeding with the trial. Also, counsel had been appointed about three months before the trial and was entirely familiar with the proof. In fact we have not seen better representation of a defendant than was made in this case. In the face of conclusive evidence of guilt, counsel was able to present every conceivable defense available. We are satisfied the judge did not abuse his discretion in overruling the motion for a continuance.

■ Appellant claims he was arrested without probable cause, the evidence obtained by the search and seizure of his vehicle was not admissible, and his statements to the police that he committed the crime were not admissible. The judge conducted an elaborate hearing on these matters in which all of the facts were developed and denied the motions to suppress the evidence. The judge saw and heard the witnesses and we accept his findings on questions of fact unless we can say the evidence preponderates against his judgment. *Sneed v. State*, 546 S.W.2d 254 (Tenn.Cr.App. 1977).

■ The officers began investigating the homicide in the evening of September 28. The witnesses who saw appellant leaving the scene were unacquainted with him and could describe him only generally as to sex, age and appearance. They saw him briefly seated in his car as he met them on the road and while his car and theirs were traveling in opposite directions at speeds of 15 to 30 miles an hour. However, they were proceeding to the scene with almost certain knowledge the girl was in distress and appellant was responsible for it. It is reasonable to assume, as their testimony showed, they took a good look at him.

Appellant's car was an old model vehicle with distinctive features which the witnesses were able to describe quite well. It is entirely possible the vehicle had some primer paint on it in various places and if so the witnesses overlooked that but otherwise their observations were remarkable. One witness remembered two digits of the license number. Two of the witnesses had seen the car before and one knew the location of a house where he had seen it parked which turned out to be appellant's residence.

The officers conducted the investigation with dispatch but much work was required. The scene had to be photographed and searched for clues and witnesses who lived near or were in the area had to be interviewed. The victim had to be identified which was difficult. The next day an officer, pursuing the lead that the car had been seen parked at a certain residence, found appellant lived there. The car was at appellant's father's house and with appellant's permission the officer photographed the car. These photographs were shown to some of the witnesses who identified them as pictures of the car they saw leaving the scene. The appellant's own physical appearance agreed with the description of him given by the witnesses. The officers concluded on the basis of this evidence they

would arrest appellant. The evidence was put together and the decision arrived at late at night. The officers went to appellant's home and arrested him about 2:00 a. m., September 30.

We think under these facts the officers, acting as reasonably prudent persons, had reasonable cause for believing appellant committed the crime of murder. T.C.A. § 40–803(3); *State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975).

■ Appellant insists his automobile was unlawfully seized and searched and the state relies on consent. An officer, of course, may search an automobile if the owner voluntarily gives his consent. *Houston v. State*, 593 S.W.3d 267 (Tenn.1980).

The officers seized appellant's automobile when they arrested him. Afterwards they searched it and turned up the girl's fingerprint, a fragment of leather from her pocketbook and part of a cigarette tax stamp from her package of cigarettes.

There was evidence that when appellant was arrested, officer Wilson said, "Gary, I need to take your car in for further evidence and examination. Can I have your consent to take it in?". To this he said, yes. According to the officer appellant said, "I'll give you my consent, you've already took pictures, you are not going to find anything". There was other evidence from which it could be inferred the permission was not so freely given. Also, at the station later he refused to sign a permit to seize and search the car. However, he orally gave permission. And his father had told him to cooperate but not sign anything.

■ We think that taking into account all of the facts and circumstances of the case, appellant voluntarily consented to and cooperated in the seizure and search of his vehicle as found by the judge.

■ Appellant insists his statement made at the police station after the arrest in which he admitted he picked up the girl, took her to the scene and stabbed her, should have been suppressed. He denies making the statement at all but in any event insists it was inadmissible for not being voluntary and lack of inadequate protection of his rights. Appellant was at the station late at night charged with murder. He expressly declined to sign a waiver. And he insists he did not waive his rights.

As already noticed, he had been advised by his father to cooperate but not sign anything. He was allowed to contact his father by telephone while in the station. Although there is some confusion about the sequence of events, it is shown that after he admitted the crime he was willing to make a further statement orally if he could be assured as to what his punishment would be and that he would not be subject to sexual assault in prison. No assurance could be given and he declined any further statement. It is clear there was no officer misconduct. The officers notified him of his *Miranda* rights at arrest and again later and he agreed he understood them. Although he would sign no waiver there was evidence he waived the rights.

The judge examined all of the evidence and concluded appellant was properly advised of his rights and waived them and that he voluntarily made the oral confession. We think the judge's conclusion is well supported by the evidence.

Under his claim the evidence was insufficient, appellant insists the identification of him in court as the person leaving the scene by the witnesses should not have been allowed. There was evidence an officer showed a witness a single picture of appellant and told the witness to say he was shown a group of pictures. This was denied and the witness agreed he was shown a group of pictures later. The witness was positive the pictures had nothing to do with his identification of appellant and that he relied on his observation of appellant in person as he left the scene. There was some other confusion in the proof about identification. The judge excluded the testimony of a witness whose identification possibly was tainted. After an exhaustive inquiry into the reliability of identification by the witnesses the judge allowed the evidence in. Obviously, his decision was on the

basis of the rules to go by in such cases. *Proctor v. State*, 565 S.W.2d 909 (Tenn.Cr. App.1978). We think he was right and there was no due process violation.

Appellant submits the issue whether his motion for a mistrial should have been granted for bias on the part of a juror who was threatened during the trial by a person who later testified for the defendant.

After the state had presented part of its proof to the jury, an incident involving Juror Mary Beth Spears was called to the attention of the judge. The juror stated that during a recess a man said to her outside the courthouse, "I'll get you". She considered this a threat and was apprehensive, especially for her family. She looked for the man in the courtroom but did not see him until the same day she was reporting the event. The judge ordered the man, Edward Robinson, held in custody. On a later court day the juror identified Robinson in the courtroom and the judge ordered him arrested. All of the jurors were examined and all testified the incident would have no bearing on their consideration of the case except Juror Heatherly who expressed concern and eventually was excused.

In her examination Juror Spears clearly testified that she did not feel appellant was involved in the incident, or responsible for it, and that she would not hold it against him. She declared her impartiality and that she would not be affected by the incident in her consideration of the case. For some reason the district attorney undertook to examine her again on the same subject as follows:

Mrs. Spears, you will still be willing to consider any evidence or any penalty in favor of the State just like you would have if this had never happened?
Yes, sir.
As well as anything in favor of the defendant?
Yes, sir.
It won't make any difference as to either side?
No, sir.

As far as hearing this case can you put this out of your mind and give both sides a fair and impartial trial?
Well, let's put it this way, if the man doesn't show his face in the courtroom again, I could.
What if he happened to be a witness?
Oh, if he's a witness, I would be concerned.

Counsel for appellant called Robinson as a witness for the defendant.

However, Robinson had not been subpoenaed and was not under the rule when the controversy came up. The state insisted he should not be allowed to testify but counsel for appellant stated that it was not until the incident occurred that it came to light he might be a witness and the judge ruled in appellant's favor. Robinson's testimony was that appellant's car had primer paint spots on it at the time of the murder. The state's witnesses had denied seeing any primer spots. There is a brief reference in his testimony calculated to refute the testimony of a state witness but in this respect it was too indefinite to accomplish the purpose and the matter intended to be refuted was of doubtful relevance. In our view the relevant part of Robinson's testimony was entirely about the primer spots.

But appellant introduced numerous witnesses to show the presence of the spots. Robinson's testimony was cumulative. Also, his close association with appellant and his resulting interest was apparent, a fact counsel necessarily knew before introducing him.

Taking into account the cumulative nature of Robinson's testimony, the fact that his interest was apparent, and the fact that Juror Spears believed him to be the one who had accosted her, one would expect he would not be called as a witness for appellant. On the other hand if he was not called the claim of bias against Juror Spears would have no substance.

█ We have no criticism to make of counsel for his selection of trial tactics. But we think under these circumstances appellant may not rely on the claim that Juror Spears was biased and partial.

■ Also, we think Juror Spears' statements relied on to show bias on her part may not be considered alone. All of her testimony and all of the facts and circumstances surrounding it must be taken into account. In our opinion, when that is done she emerges as an impartial juror.

We think the judge properly overruled the motion for a mistrial.

All of the issues are resolved against appellant and the judgment is affirmed.

DWYER and BYERS, JJ., concur.