# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### DECEMBER SESSION, 1998

**FILED**

**March 15, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 03C01-9712-CC-00547 |
| Appellee | ) | |
| | ) | HAMBLEN COUNTY |
| vs. | ) | |
| | ) | Hon. JAMES E. BECKNER, Judge |
| WALTER LEE "STEVE" ALLEN | ) | |
| and GARY L. HANEY, | ) | (Robbery) |
| | ) | |
| Appellants | ) | |

For the Appellants:

**Laura D. Perry**
Perry & Perry
**Attorney for Appellant,**
**Gary L. Haney**
503 North Jackson Street
Morristown, TN 37814

**Edward H. Moody**
Asst. Public Defender
**Attorney for Appellant,**
**Walter Lee Allen**
1609 College Park Drive, Box 11
Morristown, TN 37813-1618

**Greg W. Eichelman**
District Public Defender

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Ellen H. Pollack**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**C. Berkeley Bell, Jr.**
District Attorney General

**Victor Vaughn**
Asst. District Attomey General
510 Allison Street
Morristown, TN 37814

OPINION FILED: _____

AFFIRMED IN PART; REMANDED IN PART

**David G. Hayes**
Judge

The appellants, Walter Lee "Steve" Allen and Gary L. Haney, appeal the verdict of a Hamblen County jury finding them guilty of robbery, a Class C felony. At the sentencing hearing, the trial court sentenced each appellant as range II multiple offenders to the maximum applicable sentence of ten years. The appellants raise three issues for our review in their appeal as of right: (1) challenges to the identification process; (2) the sufficiency of the convicting evidence; and (3) the trial court's imposition of an "excessive" sentence and the imposition of consecutive sentences.[1]

After a review of the record and the applicable law, we affirm the judgment of conviction for each appellant. Additionally, we affirm the trial court's imposition of ten year sentences for each appellant; however, as the State concedes, we hold the trial court erred in ordering that the robbery conviction for each appellant be served consecutive to a conviction in Jefferson County where no sentence had yet been imposed. Accordingly, we remand this cause for judgments of conviction consistent with these findings.

BACKGROUND

On July 13, 1997, Patricia Keith was employed as a clerk at the Kwik Shop Market which is located adjacent to the Waffle House in Morristown. Shortly after 7 a.m. that morning, Ms. Keith heard the gas pumps start and went to the front of the store to await the entrance of the customer. Two black males entered the store. One man [Allen] wore a hooded "sweat jacket" inside out; and the other man [Haney] wore a white tee shirt with red writing and a baseball cap. The two men

---

[1]We note that the appellant Allen raised a <u>Batson</u> issue within his brief. However, the appellant conceded that the issue was without merit and withdrew it. Thus, we will not address it.

went to the back of the store and began selecting various items. Ms. Keith became suspicious of the men because one of the men was wearing a hood in the middle of the summer. Thereafter, the customer at the gas pumps entered the store, paid for his gasoline, and left. While the cash register was still open, the two men approached the clerk and one of them said, "this is a holdup." When Ms. Keith turned around, a gun was lying on top of their merchandise. The shorter of the two men picked up the gun and cocked it. In fear, Ms. Keith took the bills from the drawer and placed them in a bag. Then, the two men fled the store in the direction of the Waffle House. Ms. Keith sounded the store alarm and called the police. The two men took $93 from the Kwik Shop Market. When the officer arrived, she related what had happened; however, she did not feel that she would be able to identify the men other than their height and clothing. She told the officer that they both tried to hide their faces and that she could not see them very well.

The following week, Detective Riner of the Morristown Police Department requested that Ms. Keith come to the police station for a photographic lineup. She testified that Riner read her the form on the back of the lineup and then she identified the two men who robbed the store from two separate photographic arrays. She identified the man from the first lineup quickly [Haney]; however, in identifying the man from the second lineup [Allen], she hesitated "a little bit" but she was certain it was him. Then she wrote the events of the crime on the bottom of the form.

Upon cross-examination, she acknowledged that, in her initial description to the officer, she said that one of the men was five foot seven inches, one hundred and seventy pounds and the other was five foot four inches, one hundred and fifty-five pounds. She related that the top portion of the photographic identification form was not filled out when she filled out the lower portion on either of the identification forms. Although at trial she testified that the appellant Haney held the gun and

3

cocked it, she had written on the identification form that the appellant Allen had the gun. When Ms. Keith earlier testified at the preliminary hearing, she testified that she had the faces of the two men correct, however, she had confused their bodies. She noted no noticeable injuries to either man's face. She read the notations on the photographic identification forms into evidence and beside each appellant's name was the word "suspect."

On redirect examination, she testified that Detective Riner only read her the instructions before she identified the appellants. He did not give her names of any potential suspects nor did he point anything out to her. She stated that she has never had any doubt as to the faces of the two men.

James "Red" Long, the other customer at the Kwik Shop on the day of the robbery, testified that he was filling his vehicle and two cans with gasoline. He related that there were two other people in the store; but he could not identify them. He described one man as being tall and the other short. He recalled that one of the men wore a sweater with a hood and the other man wore a baseball cap. He could only identify the man in the baseball cap as African-American. He did not view the photographic lineup.

Mark McElhaney, an officer with the Morristown Police Department, testified that he responded to a police dispatch at 7:19 a.m. advising that a robbery had occurred at the Kwik Shop Market. He unsuccessfully attempted to find the suspects that matched the description given by Ms. Keith. Later, he turned the case over to Detective Riner.

Karen Webb, assistant manager at the Waffle House, testified that she was working on the morning of the robbery. She stated that, while she was pulling the blinds down, she saw two men walking around in the parking lot near the dumpster

of the Kwik Shop. She observed that both men were black; one man was "real tall" and the other man was much shorter. She described the clothing just as the other witnesses but only observed the face of the taller man. Thereafter, she was asked to view a photographic lineup. Ms. Webb only identified one of the men [Allen] from the photographic lineup as the man she saw by the dumpster in the hooded sweatshirt.

On cross-examination, Ms. Webb stated that after viewing the photographic lineup and identifying Allen, the officer provided her with the appropriate forms for identification. On the photographic identification form, she stated that it was Mr. Haney that she had seen and that she could not identify Mr. Allen. She said that Detective Riner never pointed anyone out to her as a suspect. She explained that after she identified them that she was told their names. She stated that both of the appellants had been in the Waffle House earlier that morning. She had noticed them because one of them was "extremely tall." Although the record indicates some confusion between the two appellants regarding Ms. Webb's in-court identification, neither the prosecution nor the defense clarified for the record which appellant was allegedly misidentified.[2]

Detective Steve Riner of the Morristown Police Department testified that he compiled a photographic lineup during the investigative stage of the robbery. He showed the lineup to both Ms. Keith and Ms. Webb. With regard to Ms. Keith, he stated that she had no difficulty identifying the appellant Haney. He provided her the other lineup and left the room. When he returned, she had identified the appellant Allen. After she had identified both men from the lineups, he testified that

---

[2] Q. (Prosecutor): Okay, Do you see him here today?
 A. (Webb): Yes, sir. I do.
Q. Where is he?
A. The gentlemen beside Mr. Moody, there (indicating).
 . . .
Q. (Mr. Moody): And so now which is correct?
A. (Webb): That gentleman, right there, (indicating) was the one I saw.

he gave her the forms. He testified that he filled in the names and that she was not informed of their names until after she had identified both appellants. He also stated that he did not point out any potential suspects. He stated that he wrote the word "suspect" beside each appellant's name after Ms. Keith had identified them. He stated that when he gave the form to Ms. Keith the top portion was blank. After he filled out the top portion and before she filled out the bottom portion, he made copies of the form.

In defense of the appellant Allen, Penny Morgan testified that, at the time of the robbery, the appellant Allen lived with her and her children. She stated that on the morning of the robbery "[t]hat early in the morning, we were usually still in the bed, but he was home on Sundays. . . . We were always home on Sunday." She had no specific recollection of that particular Sunday other than the kids were having a swimming party. She continuously repeated, "if it was a Sunday, we were at home."

Selina Haney, sister of the appellant Haney, testified that around 6:15 a.m. on the morning of the robbery, she heard a knock at the window. The appellant Allen was knocking on her brother's window. After she saw the appellant Allen, she proceeded to shower and get ready for work. She testified that her brother was sleeping in that room and that he did not get up before she left for work at 6:55 a.m. She stated that her brother had a terrible cold that weekend, had a cast on his wrist, and scratches on his face. She stated that when she left for work, the appellant Allen had already left.

Patricia Haney, the appellant's mother, testified that the appellant Allen came to her home the morning of the robbery. She told the appellant Allen that her son was asleep and Allen walked off the porch. After she answered the door for Allen, she went back and laid down on the couch until 9:00 or 9:30 a.m. without going by

6

her son's room. She prepared breakfast for her son, but he never came out his room. Although she admitted she never saw him, she testified that he remained in bed. She reiterated that her son had a cold, a cast on his wrist, and a scratch on his face.

Although the indictments charged the appellants with aggravated robbery, the jury returned a guilty verdict for both appellants on the lesser charge of robbery.

## I. IDENTIFICATION CHALLENGES

In their first issue, the appellants challenge their identification by the witnesses Patricia Keith and Karen Webb and the procedures employed by the police in the identification process. The appellant Allen raises the identification issue within the context of the trial court's denial of his motion to suppress. The appellant Haney challenges only his identification by the witness Keith and argues that the "photographic identification was tainted by the actions of the Morristown Police Department."

At this juncture, we are compelled to note that both appellants' arguments are misplaced. The appellant's argue only that the line-up identification and the preliminary hearing identifications should have been excluded because of their "taint." The relevant issue, however, is whether those alleged "tainted" out of court identifications affected the witnesses in-court identifications.

At the suppression hearing, Detective Riner testified that he read the form instructions to Ms. Keith, and then he gave her two different photographic arrays each containing one of the appellants. She identified both appellants and then the identification forms were filled out by both Ms. Keith and Detective Riner. The word "suspect" was then written beside both appellants' names on the two different forms.

Ms. Keith explained that when she gave the description of the individuals just after the incident that she was "very disturbed." At that time she did not believe that she would be able to identify the perpetrators. Upon viewing the photographic array, she testified that she "instinctively . . . picked the first one . . . easily;" however, after a "little bit" of hesitation [three to five minutes] she was certain that she identified the second perpetrator. She also stated that the forms were filled out following her identification of the appellants. She admitted that in General Sessions Court she had said appellant Allen had the gun, however, she acknowledged that her error was "in the identification of the bodies but not the faces. I did not get their bodies right." She stated that there was no doubt in her mind that these were the two appellants who committed the robbery.

At the conclusion of the hearing, the trial court denied the motion to suppress Ms. Keith's identification of the appellant. The trial court observed:

> These are good photo lineups. There is nothing peculiar or suggestive about any one person in the lineup. The only real issue here is whether there was some other suggestion made or if the testimony and statements of the witness are so inconsistent as to be conducive to misidentification. . . .
> [T]he uncontradicted testimony is that the witness did not look at the forms until after the identifications were made. Then the forms were filled out as to the word suspect. The witness did not see that form, did not see the word suspect until after the identification was made, and then she and the officer filled the form out together. There's nothing that contradicts that, so there's nothing suggestive about that.
> Her testimony has been a little bit inconsistent from the original statement made to the officer to the present time; but we've all been around long enough to know . . . that people's focus and attention does not get to feet, legs, pants, [and] even shirts. We know from experience that people are so focused on faces and guns. . .[t]his witness is certain about that. Her opportunity to view the perpetrators was good even though they were trying . . . [to] hide themselves. They did not wear masks. She's absolutely certain about the clothing and who wore what. Her description . . . is pretty accurate, considering all the facts and circumstances.
> Her level of certainty . . . is great here. She pointed to one defendant in one photo lineup and just without any hesitation made an identification. The other one, to her credit, she considered for a long time, and then she was certain . . . at the preliminary hearing . . . [and] today. Relatively little time elapsed between the crime and the confrontation with the photo lineups, not such a long time as to cause

failing of memory.

And there's certainly. . . not been a corruptive influence or suggestive identification.

[T]his court . . . conclude[s] that the circumstances and factors were not conducive to misidentification.

Certainly, . . . defense counsel can use any inconsistencies before the trier of fact to try to convince them that the credibility of identification should not be made. [I]t just goes to the credibility of the witness and not the legal admissibility of the evidence.

As pronounced by the United States Supreme Court, a violation of due process has occurred if the court finds that the identification procedure was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375 (1972); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967). This standard has been adopted by our state's supreme court. See Bennett v. State, 530 S.W.2d 511, 512-515 (Tenn. 1975); Sloan v. State, 584 S.W.2d 461, 466-470 (Tenn. Crim. App. 1978); Proctor v. State, 565 S.W.2d 909, 911-912 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1978); Rippy v. State, 550 S.W.2d 636, 639-640 (Tenn. Crim. App. 1977). "[R]eliability is the linchpin in determining the admissibility of identification testimony [pursuant to principles of due process]." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977). A finding that the pre-trial identification was unreliable will also require the exclusion of a subsequent in-court identification by the same witness. Id. See also State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994); State v. Davis, 872 S.W.2d 950, 956 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1993); Sloan, 584 S.W.2d at 470. The court must view the totality of the circumstances. Proctor, 565 S.W.2d at 911-912. In Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382, the Supreme Court announced factors to be considered in determining whether a violation of due process has occurred:

(1) the opportunity of the witness to view the criminal at the time of the crime;

(2) the witness' degree of attention at the time of the crime;

9

(3) the accuracy of her prior description of the criminal;

(4) the level of certainty demonstrated at the confrontation; and

(5) the time elapsed between the crime and the confrontation.

See also Philpott, 882 S.W.2d at 400. Unless the evidence preponderates against the judgment, the trial court's findings of fact following a suppression hearing are conclusive on appeal. Davis, 872 S.W.2d at 956. In the instant case, the record clearly supports the trial court's findings. Although the State's witness at times was inconsistent in her testimony, the trial court properly noted that these inconsistencies only went to the credibility of the witness's identification and not the reliability of the photographic identification. The testimony was undisputed that the word "suspect" was written after the witness made the identifications and there exists no evidence to the contrary. Therefore, viewing the totality of the circumstances, the trial court properly denied the motion to suppress. This issue is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

Next, the appellants contend that the evidence is insufficient to sustain their convictions for robbery.[3] Specifically, they emphasize (1) Ms. Keith's inability to identify her assailants immediately following the robbery; (2) her inaccurate physical descriptions; (3) her misidentification at the preliminary hearing of which appellant had the gun; (4) the word "suspect" written on the photographic identification form beside the appellants' names; (5) Ms. Webb's misidentification at trial of appellant Allen; and (6) the lesser verdict rendered by the jury indicating reasonable doubt. They assert that the lineup is "questionable" and "so suggestive and conducive to

---

[3]The appellant Allen challenged the trial court's denial of his motion for judgment of acquittal following the State's case in chief. We note this issue is waived because the appellant testified and offered evidence in his own defense rather than rest his case. See State v. Campbell, 904 S.W.2d 608 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995); State v. Smith, 735 S.W.2d 859, 862 (Tenn. Crim. App. 1987). We note that this does not waive the defendant's right to present evidence in his defense at trial nor does it waive his right for a later sufficiency review. See State v. Johnson, 762 S.W.2d 110, 115 (Tenn. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1559 (1989); Tenn. R. Crim. P. 29(a). If the defendant chooses to proceed with his defense, the defendant has only waived the review of the quantum of evidence, i.e., solely that evidence presented in the State's case in chief.

mistaken identity" rendering the trial testimony unreliable and inadmissible. Thus, they argue that, without the identification testimony, the evidence is not sufficient for a rational trier of fact to find them guilty beyond a reasonable doubt.

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). Viewing the evidence under these criteria, it is this court's responsibility to affirm the conviction if the proof was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e).

In State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993), this court held that the testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. See also State v. Shelton, No. 01C01-9505-CC-00144 (Tenn. Crim. App. at Nashville, Mar. 22, 1996), perm. to appeal denied, concurring in results only, (Tenn. Nov. 12, 1996). Moreover, the credibility of eyewitness testimony identifying the accused as the perpetrator of the criminal offense for which he stands trial is a question of fact for the determination of the jury upon consideration of all competent proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)); see also State v.

11

Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981).

The victim, Keith, identified both appellants on three occasions: (1) from a police photo lineup; (2) at the preliminary hearing; and (3) finally at trial. The witness, Webb, identified both appellants as having been in the Waffle House on the morning of the robbery and on direct examination identified Allen as the person she saw behind the Kwik Market. Although testimony of the the State's witnesses contained some inconsistencies, counsel for both appellants thoroughly cross-examined these witnesses regarding their ability to perceive, recall, and identify the appellants. Additionally, although both appellants presented an alibi defense, *i.e.*, the testimony of Allen's ex-girlfriend and the mother and sister of Haney, the jury, by returning a guilty verdict, accredited the testimony of the State's witnesses. We conclude that the evidence is sufficient for a rational trier of fact to find the appellants guilty beyond a reasonable doubt. This issue is without merit.

## III. SENTENCING

In their final issue, the appellants contend that the trial court's imposition of the maximum sentence of ten years was excessive. Moreover, the appellants contend that the trial court erred by ordering this sentence to run consecutively to a sentence that had not yet been imposed in another county. Both appellants were sentenced as Range II Multiple Offenders for robbery, a Class C felony, for which the range of punishment is six to ten years. See Tenn. Code Ann. § 39-13-401; Tenn. Code Ann. § 40-35-112(b)(3) (1997). Both appellants received the maximum ten year sentence. This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial

12

court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Here, the presumption applies. The burden is on the appellant to show that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

## A.  Walter Lee "Steve" Allen

The record reflects that this appellant Allen is twenty-seven years old, unmarried, and has a high school education. No present employment or history of employment is contained within the presentence report. The appellant Allen admits to alcohol abuse. He has a lengthy prior criminal history from 1989 to the present including the following convictions: aggravated burglary, theft over $1,000, DUI and leaving the scene of an accident. Additionally, he has two misdemeanor convictions of public intoxication and two convictions for thefts under $500. He has also been previously revoked while on probation and parole.

With regard to enhancement factors, the trial court applied, "previous history of criminal convictions in addition to those necessary to establish the appropriate range," see Tenn. Code Ann. § 40-35-114(1) (1997), and "previous history of unwillingness to comply with the conditions of a sentence involving release in the community." See Tenn. Code Ann. § 40-35-114(8). The trial court applied no mitigating factors. Appellant Allen argues that the court misapplied the first enhancement factor because it was already utilized to establish the appellant as a multiple offender. This argument is misplaced. When the State filed its notice to seek punishment as multiple offender[4], it relied only upon his convictions for

_____

[4]Under Tenn. Code Ann. § 40-35-106(a)(1) (1997), a multiple offender has "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes . . ."

13

aggravated burglary and theft over $1,000. A plethora of convictions beyond these two existed for the trial court to use in support of this enhancement factor.

After conducting *de novo* review, we conclude that the trial court properly applied the appropriate enhancing factors and agree that no mitigating factors apply in this case. When the sentencing court finds only enhancement factors applicable without any mitigating factors present, the court may set the sentence above the minimum in the range but still within the range. See Tenn. Code Ann. § 40-35-210(d). Thus, we conclude that the appellant's ten year sentence for robbery is justified. This issue is without merit.

## B. Gary L. Haney

The appellant Haney is twenty-six years old, single, and dropped out of school in the ninth grade after being expelled. The presentence report reflects a history of alcohol and drug abuse. The record contains no indication of current employment or of an employment history. This appellant also demonstrates an extensive criminal history from 1989 to the present including: aggravated robbery, two aggravated burglaries, attempted burglary of an automobile, burglary of an automobile, and three thefts over $500. Additionally, the appellant has numerous misdemeanor convictions for resisting arrest, evading arrest and several offenses involving alcohol and related offenses. The appellant's probation has been revoked on three occasions.

When determining the appropriate sentence, the trial court applied the following enhancement factors for the appellant's conviction of robbery: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," see Tenn. Code Ann. § 40-35-114(1); (2) "the defendant was a leader in the commission of an

14

offense involving two (2) or more criminal actors," <u>see</u> Tenn. Code Ann. § 40-35-114(2); (3) "the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," <u>see</u> Tenn. Code Ann. § 40-35-114(8); and (4) "the felony was committed while on probation for another felony," <u>see</u> Tenn. Code Ann. § 40-35-114(13). The trial court applied no mitigating factors and imposed the maximum ten year sentence.

Upon *de novo* review, we conclude that the trial court correctly applied the appropriate enhancement factors. Furthermore, we agree that no mitigating factors applied to this appellant. Accordingly, we affirm the trial court's imposition of the maximum sentence of ten years for this appellant. This issue is without merit.

## IV. CONSECUTIVE SENTENCES

Both appellants challenge the trial court's order requiring that their respective robbery convictions be served consecutive to a robbery conviction in Jefferson County. The record reflects that, on the date of the appellants' sentencing hearings in this case, both appellants had been convicted in Jefferson County of aggravated robbery. However, the sentencing hearing for that conviction had not been held and thus no sentence had been imposed.

In support of their argument, the appellants cite <u>State v. Thompson</u>, 565 S.W.2d 889 (Tenn. 1977) and <u>State v. Arnold</u>, 824 S.W.2d 176 (Tenn. Crim. App. 1991). The State concedes that the trial court erred in imposing the robbery convictions consecutive to the Jefferson County convictions. We agree. In <u>Thompson</u>, 565 S.W.2d at 890, the supreme court held that consecutive sentences may only be ordered in conjunction with a <u>previously</u> <u>imposed</u> <u>sentence</u>. (Emphasis added). This court has held that "the last sentencing court should have the responsibility to determine whether or not a sentence should be served

15

consecutively." <u>Arnold</u>, 824 S.W.2d at 178 (citing <u>State v. Stafford</u>, 368 N.W.2d 364, 366 (Minn. App. 1985)). "The consecutive sentencing is no less in futuro even though the 'conviction' existed at the time of the sentencing." <u>Arnold</u>, 824 S.W.2d at 178 (citing <u>State v. White</u>, 18 Ohio St. 3d 340, 481 N.E.2d 596, 598 (1985)).

Therefore, we conclude that the trial court erred by imposing the ten year sentences consecutive to pending sentencing decisions to occur *in futuro* for both appellants. However, we find no error in the trial court's decision to run appellant Haney's sentence consecutive to the outstanding seven year sentence for theft in Cocke County. At the sentencing hearing, the trial court found that Haney's criminal activity was extensive and that he was on probation at the time the present offense of robbery was committed. Tenn. Code Ann. § 40-35-115(2) and (6) (1997). We conclude that consecutive sentences are necessary to protect the public from the possibility of the appellant Haney's future criminal conduct and the aggregate

sentence is reasonably related to the severity of the present offenses. <u>See</u> <u>State v. Wilkerson</u>, 905 S.W.2d 933, 939 (Tenn. 1995).

## V. CONCLUSION

The judgments of convictions for both appellants are affirmed. Moreover, we affirm the trial court's imposition of the ten year sentence for each appellant; however, we hold the trial court erred in imposing consecutive sentences for the appellants with regard to the pending sentences in Jefferson County. The appellant Haney's consecutive sentence with Cocke County is affirmed.

This case is remanded for entry of judgments of conviction consistent with this opinion.

16

_____
DAVID G. HAYES, Judge


CONCUR:




_____
JERRY L. SMITH, Judge


_____
JAMES CURWOOD WITT, JR., Judge