**Coy RAMSEY, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Oct. 9, 1978.

R. Bruce Ray, Burnett, Ray & Ramsey, Jamestown, appellate counsel, John E. Appman, Jamestown, trial counsel, for petitioner.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Robert T. Beaty, Asst. Dist. Atty. Gen., Jamestown, for respondent.

OPINION

HARBISON, Justice.

Petitioner Coy Ramsey was convicted of burglary. His petition for certiorari primarily challenges the sufficiency of the evidence.

In the opinion of the majority, both the credibility of the witnesses and the weight to be given their testimony were involved in the case. The jurors, who saw and heard the witnesses, resolved the issues in favor of the State. Their verdict was concurred in by the trial court and by the Court of Criminal Appeals. In our opinion there was sufficient evidence to justify the conviction of the petitioner, and we are unable to sustain the assignments that the evidence preponderated against the verdict.

By his own admission to the owner of the burglarized premises, petitioner was present at the time of the offense in an automobile parked near the premises. The automobile had been obtained by the petitioner from his sister, and earlier in the evening he had driven it. During the day preceding the burglary petitioner's confederate, Langley, had discussed burglarizing the premises in question and had requested a cousin of petitioner to assist him. The cousin had refused. However, the petitioner thereafter obtained an automobile and accompanied Langley to the premises and

admittedly was in or near the automobile when the burglary took place.

The principal witness for the state was Sheriff Cecil Byrge of Morgan County. On the night of the burglary, at about midnight, while on routine patrol, he observed an automobile parked on the side of the Old Crossville Road, near the burglarized premises. His automobile was equipped with aircraft landing lights, and he turned these onto the parked automobile. He saw petitioner with one Terry Langley at the rear of the automobile, the petitioner being crouched down behind it. They immediately started running away from the automobile.

The trunk of the car was open, and some of the property stolen from the burglarized premises was inside it; some was on the ground outside, and a stolen motorcycle was on its side behind the automobile. The sheriff testified that he saw both the petitioner and Langley flee from the automobile and run up the road. He testified that he searched the entire area diligently and remained in the vicinity for more than an hour and a half without ever discovering the petitioner.

The entire defense offered by the petitioner was that he was too intoxicated to aid or abet Langley or to have any knowledge that a burglary had taken place. Langley undertook to assume full responsibility for the burglary, and testified that the petitioner was too drunk to run but only stumbled off to the side of the road. This testimony was contradicted by the sheriff, and the jury was not obligated to accept Langley's version.

Petitioner was not found anywhere in the area after a diligent search lasting for a considerable period of time. He admitted that on the next day he went to his brother's home where he hid for several days and then went to Florida and stayed for six weeks.

■ The degree and extent of the intoxication of the petitioner were issues of fact. If he were too drunk to participate in the burglary or to assist in putting the stolen merchandise in the trunk, and if he were too drunk to know what he was doing, then a jury might have also concluded that he would have been unable to recognize the sheriff or to make an effective escape.

Langley was the principal witness offered for the defense, but his credibility was open to attack. The State proved that he had pleaded guilty to burglary in connection with the present incident, and it also established a prior larceny conviction.

Langley was contradicted not only with respect to whether petitioner was unable to run when the sheriff arrived. He testified that he and petitioner sat in the car near the burglarized premises for several hours, drinking, before Langley made the first of his three unassisted trips to loot a garage, a truck and a desk of such items as a motorcycle, several guns, a money box, cartons of cigarettes and a CB radio. Yet the sheriff said that he searched in and around the car and found neither beer cans, whiskey bottles nor any other containers of intoxicants. The jurors were not compelled to infer that petitioner and Langley, fleeing unceremoniously from the scene as the sheriff testified, or stumbling drunkenly a few feet into a nearby wood as Langley said, carried their empty beer or whiskey bottles with them. They might not have believed the parties sat in the car for that length of time, since no evidence of their drinking was found—and they might not have believed that petitioner was as drunk as he claimed.

Petitioner undertook to place an innocent cast upon his flight from the scene and his subsequent absence from the state. His testimony becomes less convincing, however, in light of the fact that both he and Langley knew the next day that warrants were outstanding for their arrest. Both admitted meeting the next day, and Langley testified:

"Q. And Mr. Ramsey knew there was a warrant for him, too, didn't he?

"A. Yes, I'd say he did."

Ramsey's sister was aware shortly after the event that a warrant had been issued. The jury was not bound to accept Ramsey's testimony at trial that he had not discussed

the burglary and his use of her car with his sister in the eleven months intervening between the burglary and the trial—although they lived in the same house.

Nor was it bound to accept Ramsey's testimony that he had "been drunk about six years." He was twenty-one on the trial date—about twenty when the burglary occurred.

In their testimony both petitioner and Langley referred to numerous persons who allegedly saw them during the evening before the burglary and who should have been in position to verify petitioner's alleged drunken stupor. None of these witnesses, however, was called to testify.

Concededly the State did not offer a witness who saw the petitioner break and enter the burglarized premises. This, however, is certainly not required in order to convict. T.C.A. § 39–109 provides:

"All persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders, and punished as such."

Petitioner in this case obtained the vehicle used to transport him and Langley to the scene of the burglary. The burglary had been discussed in his presence earlier in the day. He was not too drunk to drive the car when it was turned over to him by his sister. He was not too drunk to be out in the rear of the vehicle with Langley, crouched down behind it, and apparently aiding in putting stolen merchandise into it. He was not too drunk to flee from the sheriff and effectively escape. If he and his companion drank extensively at the scene, they carefully removed all evidence of doing so. Petitioner fled the jurisdiction after learning of a warrant for his arrest.

In our opinion, there were issues made for determination by the jury and sufficient evidence to support its verdict. The judgment of the Court of Criminal Appeals is affirmed at the cost of petitioner.

COOPER and FONES, JJ., concur.

HENRY, C. J., and WILLIAM I. DAVIS, Jr., Special Justice, dissent.

HENRY, Chief Justice, dissenting.

I respectfully dissent.

We granted certiorari in this criminal action, wherein petitioner was convicted of burglary, in order to examine the sufficiency of the evidence.[1] We examine it in the light of the limited nature of our scope of review and with full regard given to the rule that in a criminal case a jury verdict, approved by the trial judge, thrusts upon an appealing defendant the burden of showing that the evidence preponderates against his guilt, *Martin v. State*, 542 S.W.2d 638 (Tenn.Cr.App.1976), and that this rule prevails in circumstantial evidence cases. *State v. Townsend*, 525 S.W.2d 842 (Tenn. 1975). In my view, the evidence does preponderate against petitioner's guilt.

I.

The State called three witnesses.

The first of these was the owner of the burglarized premises who testified as to the fact of the burglary but whose testimony contains nothing that would tend to incriminate petitioner.[2]

The principal witness was Sheriff Cecil Byrge of Morgan County. On the night of the burglary, at about midnight, he was on routine patrol in the area of the burglarized premises. He observed an automobile

---

1. We consider this case upon certiorari notwithstanding the flagrant violation of Rule 12 of this Court in that no assignments of error have been filed. The respondent's brief, extracting a statement from the petition, comes up with three assignments, all attacking the sufficiency of the evidence. In view of this position taken by the State, and in the interest of justice, we consider the case on its merits.

2. As a matter of fact his testimony was favorable to petitioner. He says that a month or two after the burglary petitioner came to his place of business and told him that petitioner was in the car drunk and passed out, that he took no part in the burglary, that he would help him try to find the stolen property, and that after the Sheriff came "he laid off up there in the woods."

parked on the side of the Old Crossville Road, directly above the burglarized premises. He threw his aircraft landing lights onto the parked vehicle and, upon doing so, saw petitioner and Terry Langley behind the car "hunkered over." They started running up the road.

After looking into the open trunk and generally about the car and observing various items of merchandise, he followed them on foot, searching along the side of the road with his flashlight. The Sheriff's search was apparently impeded by the fact that "on the banks there's pines and evergreens and bushes and it's kind of in the woods like." The woods reach a point to within ten feet of the road. From the time he first saw petitioner and Langley "hunkered over" until they were out of sight was "just a few seconds."

The State's final witness was Wilda McCarty, petitioner's sister, who owned the automobile in and around which the stolen merchandise was found. Petitioner had borrowed her car around seven or eight o'clock in the evening and was "red-eyed" drunk. She says petitioner lived with her and that he was in Fentress County "a long time" before he was arrested, driving about, "going anywhere he wanted to," and making no effort to hide.

The State closed and the petitioner made a motion for a directed verdict. At that time the State had proved:

   a. that a burglary had been committed
   b. that petitioner and a companion were in the immediate vicinity around midnight
   c. that the fruits of the burglary were in an automobile borrowed by petitioner from his sister
   d. that petitioner and Langley ran when the Sheriff approached.

While the proof, at this stage was marginal, the trial judge overruled the motion and the petitioner elected to put on proof. This cured the error, if any, in failing to sustain the motion for a directed verdict.

Petitioner's proof, however, puts an entirely different light upon the matter.

The record shows that Langley had pleaded guilty and was confined in the state penitentiary. The able and experienced District Attorney General apparently knew that his case was on fragile foundation without Langley's testimony. He, therefore, procured a subpoena for Langley and obtained an order from the trial judge directing that Langley be delivered to the custody of the Sheriff of Morgan County for his appearance as a witness.

The record shows that on the trial date the District Attorney conferred with Langley. The details of the conversation are not shown in the record, but it is evident that his testimony was not to the General's liking so he did not call him as a witness. Instead, he was called by petitioner.

Langley testified unequivocally that he, and he alone, unaided and unabetted, committed the burglary. He testified that he and the petitioner, who is shown in the record to have a drinking problem and to have been "on pills", met up at around 10:00 o'clock, a. m. on the date of the burglary, at a package beer store and they were together the rest of the day and night. He says they drank "quite a bit" during the day and were "drinking all day."

Around seven or eight o'clock they borrowed Wilda McCarty's car and with petitioner, who "wasn't in a condition to drive", at the wheel they went back to the beer joint and purchased two more six packs of beer. At some point not clearly revealed by the record Langley took over the driving.

After driving around at random, they parked on the side of the Old Crossville Road. After drinking beer for a while, petitioner "passed out" and, as Langley put it, "I got to thinking that I'd just go down to Mr. Smith's and break in his premises." He did not discuss it with petitioner; petitioner did not accompany him or help in any way. As Langley said of petitioner, "[t]he man did not know where he was at," and "he didn't have the ability to go any place with me." When the Sheriff approached and after Langley had warned him, petitioner "did stumble and went over to the left and laid down." By way of further

explanation Langley says that petitioner "went off on the weeds" and "on the passenger side" of the car.

Langley testified that while petitioner was passed out in the car he made three trips to and from the burglarized premises. The first trip was around 9:30 or 10:00 o'clock and all three trips were completed when the Sheriff arrived on the scene sometime around midnight or shortly thereafter. Upon his return from the third trip petitioner was no longer "passed out" but was "sitting in the car with the door open with his head bent over."

The petitioner, testifying in his own behalf, says he was drunk and doesn't know what happened. He does remember the Sheriff's arrival and trying to run. He went over into the woods at the edge of the road and stayed there all night.

Petitioner says that he "hid out in this little trailer for about two or three days, and then I went to Florida," where he stayed for about six weeks. When asked on cross-examination why he did not go to the Sheriff and tell him what happened, he responded:

> Well, see, like when you been drunk about six years, you don't take a chance on going to jail. I mean, I like I would, more than likely, I believe I would have probably or could have died.

The State called the Sheriff on rebuttal to testify that he found no beer cans in or around the car.

At the conclusion of this rebuttal testimony the defendant renewed his motion for a directed verdict.

## II.

Petitioner was indicted for burglary and larceny. The jury found him guilty of burglary in the third degree, and, by its failure to respond to so much of the indictment as charged larceny, acquitted him of that charge. *Conner v. State,* 531 S.W.2d 119 (Tenn.Cr.App.1975). Thus we deal only with a burglary conviction. The elements of third degree burglary are:

a. the breaking and entering into a business house, etc.

b. with intent to commit a felony.

There is no direct evidence that petitioner committed any act of burglary. To the contrary the proof shows without contradiction that petitioner was drunk and passed out at the time the burglary was committed; that he had no advance knowledge of it; that he did not go into the building; that Langley did not discuss it with him; that petitioner did not help, assist, aid or abet in any way; and that at the time of the commission of the burglary he didn't even "know where he was at."

Quite aside from the defendant's own version of the facts, this was the sworn testimony of Langley who was subpoenaed by the State to testify as a witness for the State. His testimony stands without contradiction and his credibility was not attacked. Where the testimony of a witness is not contradicted, either by direct proof or by circumstances inconsistent with its truth, it must be taken as true. *Cleveland Wrecking Co. v. Butler,* 57 Tenn.App. 570, 421 S.W.2d 380 (1967). The appellate courts will not permit the uncontradicted testimony of a witness to be discarded or disregarded arbitrarily. *Frank v. Wright,* 140 Tenn. 535, 205 S.W. 434 (1918).

The State, having been responsible for bringing Langley into court, is hardly in a position to attack his testimony. In point of fact it does not do so. The only area wherein the State takes specific issue with Langley is his testimony that "petitioner was incapable of running from the sheriff and only managed to stumble to the side of the road" whereas the Sheriff said that "both men ran up the road."

We do not regard this seeming inconsistency as being significant. The Sheriff testified that he saw them for "just a few seconds."

The only evidence tending to indicate petitioner's guilt was (1) that the automobile belonged to his sister, (2) that the stolen goods were found in and about his car and (3) flight. All three of these, even if accepted fully and given their most unfavora-

ble implications, fall far short of establishing guilt beyond a reasonable doubt.

It is true that the automobile belonged to petitioner's sister, but it is undisputed that he was in no shape to operate it and had ceded all possession and control of it to Langley.

It is true that the articles of stolen merchandise were found in and around the automobile. That this is an incriminating circumstance there can be no doubt, but again the undisputed proof shows that Langley burglarized the premises and "toted" the loot back to the car.

It is true that Tennessee follows the general rule that "proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them." *Bush v. State*, 541 S.W.2d 391 (Tenn.1976). But, as said in *Bush* :

> A legal presumption is a fiction of the law and is an assumption for convenience, but where proof to the contrary is introduced, the assumption is waived for it is no longer logical to assume a fact which is refuted by positive testimony. Id. at 395.

However, the inference is not completely destroyed by positive proof but remains to be weighed by the jury along with other facts and circumstances. In the case at bar, there are no other convincing facts and circumstances against which to weigh the uncontradicted proof, unless flight may be so regarded.

The record shows, first, that the petitioner ran from the Sheriff. This initial flight is susceptible of two interpretations. First, it is arguable that he ran because he was guilty. Second, it is equally plausible to say that he was innocent but ran to avoid involvement in a suspicious operation; however, in the context of this case it is more plausible to say that he ran because he was then and there guilty of the offense of public drunkenness. The State argues that his ability to run is indicative that he was not drunk. This argument is without merit. Any drunk has the gumption to run from the high Sheriff. This might properly be characterized as a prevailing and prudent practice.

Again, the trip to Florida may have been the flight of a guilty man or it may have been the flight of an innocent man caught in a web of suspicious circumstances and feeling it expedient to disappear until things cooled down. The record doesn't show why he ran. Neither does it show why he elected voluntarily to return and move openly in and around Morgan County. If the flight be construed as an act of guilt, the voluntary return must be treated as an act of innocence. The record does not establish with any degree of clarity the reasons for the sojourn in Florida.

In order to sustain this conviction, we must assume that the petitioner did that which the proof, without contradiction, shows he did not do and that which the State wholly failed to prove he did. This we cannot do.

This conviction rests wholly upon circumstantial evidence. The rule in Tennessee, as approved in *Overton v. State*, 521 S.W.2d 229, 232 (Tenn.Cr.App.1974), is that

> the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime.

We recognize that normally this is a jury question, but the fact remains that the jury in this case did not have before it evidence sufficient to "exclude every other reasonable theory or hypothesis except that of guilt."

At the very outset we recognized the correct standard of review. This rule, however, "presupposes record proof presenting a factual basis for consideration and determination by the jury." *Hughes v. State*, 3 Tenn.Cr.App. 602, 465 S.W.2d 892, 896 (1970). Here, there was no such factual basis. I would, therefore, hold that the evidence preponderates against the verdict of the jury.

I am authorized to state that Special Justice WILLIAM I. DAVIS, Jr., concurs in this dissent.