IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 6, 2005 Session

**STATE OF TENNESSEE v. ROBERT FLUELLEN**

**Appeal from the Criminal Court for Shelby County**
**No. 04-06294   Chris Craft, Judge**

---

**No. W2005-01155-CCA-R3-CD  - Filed February 7, 2006**

---

Following a bench trial, the Defendant, Robert Fluellen, was convicted of one count of burglary of a building, a Class D felony.  The Defendant was sentenced as a multiple offender to six years in the workhouse.  On appeal, the Defendant contends that the evidence presented at his bench trial is not sufficient to sustain his conviction.  Finding no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., Joined.

Irwin Cantor (at trial) and Gerald S. Green (on appeal), Memphis, Tennessee, for the Appellant, Robert Fluellen.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Facts**

This case arises from the Defendant's conviction for the burglary of a building in violation of Tennessee Code Annotated section 39-14-402 (2003), a Class D felony.  The trial court held a bench trial where the following evidence was presented: Joseph A. Guido, the Regional Director for Captain D's restaurant, explained that he oversaw the operation of twenty Captain D's restaurants including the one involved in this case.  Guido testified that the Captain D's restaurant involved in this case had caught on fire before June 16, 2004.  He recalled that, on June 16, 2004, the police called his office and told him that he was needed at the Captain D's restaurant.  Guido said that,

when he arrived at the restaurant, he saw several police cars, some items from the restaurant in a trash can at the car wash next door, and the Defendant sitting in the back of a squad car.

Guido testified that he visited the restaurant a few days before June 16, 2004, and the restaurant was completely boarded up except for a hole that had burned through the roof. He explained that the trash can and restaurant items found with the Defendant were located in the restaurant's front lobby. Guido said that, when he returned to the restaurant on the day of this incident, he noted that the gutter was bent, the shutters were broken, and a wire was wrapped around a back entrance door. He also saw the trash can and other restaurant items at the car wash next door. Additionally, Guido testified that four French fry pots, some stainless steel tables, and a stainless steel sink were no longer in the restaurant, and he described where those items had previously been located. Further, Guido said that he never gave the Defendant permission to take property from the restaurant, and the total value of the property missing from the restaurant was more than six thousand dollars, however, only between four and five hundred dollars worth of property was recovered.

On cross-examination, Guido estimated that the missing sink weighed approximately one hundred and fifty to two hundred pounds, and each missing fry pot weighed a "couple hundred" pounds. He also testified that, after the fire, the ceiling was hanging down in the dining room, the roof was burned, lots of water was on the floor, and a lot of soot was in the restaurant. Additionally, he testified that the restaurant had been in a burnt condition for five months, no employees were reporting for work at the restaurant, and the lettering on the sign in front of the restaurant read, "closed due to fire." He told the area director to change the sign in front of the restaurant to read, "New restaurant coming soon." Guido explained that he had his maintenance employee put some of the restaurant's items into the restaurant's trash can. He testified that large trash containers for the restaurant sat on a concrete pad behind a wooden fence behind the restaurant. Guido admitted that he did not know who moved the items out of the restaurant. He also explained that the building had no security alarms or devices because the fire department shut off the building's electricity.

On redirect examination, Guido testified that the items inside the trash can were being moved to a warehouse. He said that he was not allowed to throw anything away because he needed to provide the insurance company with information. He explained that he had not thrown the items away, he had not authorized anyone else to throw them away, and he is the sole person who was able to make such authorizations. On re-cross examination, Guido said that only he and the maintenance man have keys to the restaurant.

Marshall Chism, the owner of Water World Detailer located next to the Captain D's restaurant, testified that, on June 16, 2004, he saw the Defendant, and the Defendant asked them if he knew anybody who needed deep fryers or chairs. Chism said that the Defendant told him that he would not take long to get the deep fryers and chairs because the items were "right at Captain D's over here." He explained that he called the police because, over a three-day period, the Defendant kept asking Chism if he wanted to buy anything. Chism explained that he did not see the Defendant go inside the restaurant, but he did see the Defendant go to the back of the restaurant. Chism testified that, when the police came to the scene of this incident, he told them that the Defendant was

in his garage, and the police saw the Defendant with the trash can and various items from the restaurant in Chism's garage.

On cross-examination, Chism testified that he was scared that the police were trying to frame him. He said that he has felony convictions for assault and for theft of property, and his first drug case is presently pending. He explained that the "Feds" were watching him and making sure that he did not get into trouble was his primary concern when he called the police.

On direct examination, Milton Bonds, Jr., an officer with the Memphis Police Department, testified that, when he first saw the Defendant, the Defendant told him that he "just got the trash out of the Captain D's." On cross-examination, Officer Bonds said that he did not know about Chism's Federal drug charge until he spoke with the prosecutor. Officer Bonds could not recall if Guido reported that the stainless steel sink and the fry pots were missing on the day of the crime.

The Defendant testified that, on June 16, 2004, he got dropped off at the Gridiron restaurant, which is located on the same road as the Captain D's restaurant, and he then walked to the Nature Store further down the road where he believed he could find some work. When the Defendant arrived at this store, he saw a sign in the window stating that the owner was out to lunch and would return around 1:45 or 2:00 p.m. The Defendant left the store and went to another store in order to purchase a pack of cigarettes. He explained that a pathway runs along the side of this store and, after cutting through the pathway, one ends up on a parking lot on the backside of the Captain D's restaurant where the dumpster is located. The Defendant said that he headed toward the Captain D's restaurant to look for his homeless friend who usually camps out there. He said that he did not see his homeless friend near the dumpster behind the restaurant, but he did see a trash can with some items inside of it. The Defendant testified that he never went inside the restaurant, never "jerry-rigged" a door or climbed through a hole in the roof to get inside the restaurant, and never climbed the gutters of the roof to get into the restaurant. He testified that he never saw the four French fry pots or the stainless steel sink that Guido testified about. He said that he thought that the trash can and the items inside it were garbage, and he took the trash can to a different dumpster located closer to the car wash. He testified that he was sorting through the items from the trash can when the police pulled into the car wash. The Defendant denied offering to sell Chism any of the items from the trash can and denied telling the police officer that he got the items from the Captain D's restaurant.

On cross-examination, the Defendant read a statement that he gave to the police, stating "there is another grate like on the side of the building. It just slides open and I slid it part of the way open. That's when I got the garbage can from the grate." Upon further questioning, the Defendant responded that he had also told the police officers that, "I had been there drinking a beer. I saw the big guy from the car-wash next door and figured he could use the paper towels and stuff. So I took them to him to try to sell them." The Defendant denied lying while giving this statement to the police and denied lying while testifying in court. Upon further questioning, the Defendant admitted that he tried to sell the items at the car-wash next door and that he had a prior conviction for burglary.

On redirect examination, the Defendant acknowledged that, when he gave his statement to the police on the day of the crime, he was describing his state of mind and not what was coming out of his mouth. On re-cross-examination, the Defendant read from the statement that he gave to the police which described how he asked someone at the car wash if they could use the items that the Defendant found inside the trash can.

In rebuttal, the State re-called Guido, who testified that no metal grate or gate is located near the dumpster behind the Captain D's restaurant. Guido stated that there is a metal gate on the side of the building, but he could not recall if that gate was pad-locked on June 16, 2004. He acknowledged that the metal grate was an exterior door and acknowledged that the metal grate leads to a walkway between the building and another door. He explained that no roof covers this walkway and acknowledged that the metal grate or gate would not lead to the restaurant's interior.

Based on this evidence, the Defendant was convicted of burglary of a building and sentenced as a multiple offender to six years in the work house.

## II. Analysis

On appeal, the Defendant contends that the evidence presented at his bench trial is insufficient to sustain his conviction.

## A. Waiver

The Defendant's brief is arguably inadequate to allow a meaningful review of the issue he attempts to assert as error on appeal. See Tenn. Crim. App. R. 10(b). Under Rule 10(b), Rules of the Court of Criminal Appeals, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." The Defendant's arguments do not contain any references to the record. Therefore, the Defendant risks waiving the issue he presents. However, rather than treat this issue as waived pursuant to Tennessee Court of Criminal Appeals Rule 10(b), we will address the Defendant's contention.

## B. Sufficiency of the Evidence

The Defendant contends that the evidence presented at trial is insufficient to support his conviction of burglary. Specifically, he contends that the State failed to prove that he entered the premises at issue. He also alleges that the building the State has accused him of entering is not delineated in Tennessee Code Annotated section 39-14-402. The Defendant further argues that the evidence shows that he had no intent to commit theft because he did not believe that any owner placed value on the items that he found. The State counters that the Defendant waived these issues

by failing to make adequate references to the record and that the evidence is legally sufficient to support the Defendant's conviction.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P.13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)

Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). It is well-settled law in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

To convict the Defendant of burglary, the State was required to prove that the Defendant "without the effective consent of the property owner: enter[ed] a building other than a habitation (or any portion thereof) not open to the public, with the intent to commit a felony, theft, or assault; . . . ." See Tenn. Code Ann. § 39-14-402(a)(1). According to Tennessee Code Annotated section 39-14-103 (2003), "A person commits theft of property if, with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." A property owner is defined as one in lawful possession of the property. Tenn. Code Ann. § 39-14-401(3) (2003). Before the accused may be convicted from purely circumstantial evidence, "the circumstances must be so strong and cogent as to excluded every other reasonable hypothesis save the guilt of the defendant . . . ." State v. Wilson, 924 S.W.2d 648, 649 (Tenn. 1996). We note that, in order to convict a defendant of burglary, the State is not required to offer a witness who actually saw the defendant break and enter the burglarized premises. Ramsey v. State, 571 S.W.2d 822, 824 (Tenn. 1978). Further, unsatisfactorily explained possession of recently stolen property may be sufficient in and of itself to sustain a burglary conviction. See State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). In the absence of an acceptable excuse, a jury may

reasonably infer that by breaking and entering a building containing valuable property, the defendant intended to commit theft.  State v. Ingram, 986 S.W.2d 598 (Tenn. Crim. App. 1998).

In the case under submission, we conclude that sufficient evidence was presented to support the Defendant's conviction.  The trier of the fact could reasonably infer from the evidence that the Defendant entered the Captain D's restaurant.  The Defendant alleges that the evidence fails to establish that he entered a building as delineated in Tennessee Code Annotated section 39-14-402. However, in the Defendant's own brief, he admits that the evidence in this case "establishes that the [Defendant] took some thought to be abandoned items from a trash bin in a burned out building formerly used as a Captain D's restaurant [sic]."  There is nothing in Tennessee statutes or controlling case law that suggests that the restaurant was not a building for the purposes of Tennessee Code Annotated section 39-14-402.  The trier of fact accredited the testimony of Guido and Chism.  Further, the trier of fact rejected the Defendant's assertion that he did not enter the restaurant.  The trier of fact did not find any credible proof that the items were found near the restaurant's dumpster, and believed that the Defendant offered to sell Chism a fryer that Guido said was missing from the restaurant's cooking area on January 16, 2004.  In addition, Officer Bonds testified that the Defendant told him that the items from the restaurant found in the Defendant's possession came from the Captain D's restaurant.  In other words, in order to gain possession of the trash can and the other items from the restaurant, the Defendant would have had to have broken into the restaurant.  When asked to explain how he came into possession of these items, the Defendant presented conflicting stories.  Based on the aforementioned evidence, the trier of fact could reasonably infer that the Defendant had been inside the restaurant.

The proof at trial, viewed in the light most favorable to the State, also shows that the Defendant entered the restaurant with the intent to commit theft.  Although the Defendant claimed that he did not think that anyone had an ownership interest in the trash can and lettering, he failed to present any proof to substantiate his claim.  Guido testified that he had not thrown the items away, he had not authorized anyone else to throw them away, and he is the sole person who is able to make such authorizations.  The trier of the fact found that the Defendant's continuous offers to sell Chism items from the restaurant established that, when entering the restaurant, the Defendant intended to take items from the building.  The trier of the fact could infer that the Defendant entered the Captain D's restaurant with the intent of stealing property in order to sell it for profit.  Questions concerning the credibility of witnesses and the weight and value of the evidence are left to the trier of fact. Liakas, 286 S.W.2d at 859.

The evidence when taken together is sufficient to justify the finding of the trial court.  Any rational trier of fact could conclude beyond a reasonable doubt that the Defendant illegally entered the Captain D's restaurant with the intent to commit theft.  Therefore, we conclude that the State proved each element of the offense beyond a reasonable doubt.  The Defendant is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing, we conclude that the trial court did not commit reversible error. Therefore, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE