IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2008

STATE OF TENNESSEE v. CLARENCE DODSON

Direct Appeal from the Criminal Court for Shelby County
No. 06-05740     James C. Beasley, Jr., Judge

No. W2007-01875-CCA-R3-CD  - Filed September 5, 2008

The defendant, Clarence Dodson, was convicted by a Shelby County jury of aggravated burglary, a Class C felony, and theft of property under $500, a Class A misdemeanor. He was subsequently sentenced to concurrent sentences of fifteen years and eleven months, twenty-nine days for the respective convictions. On appeal, he raises two issues for our review: (1) whether the evidence is sufficient to support the aggravated burglary conviction; and (2) whether the trial court erred in allowing prior convictions for aggravated burglary and misdemeanor theft of services to be used for impeachment purposes. Following review of the record, we find no error and affirm the judgments of convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Garland Ergüden and Rusty White, Assistant Public Defenders, for the appellant, Clarence Dodson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The victims, Jonathan White and Leandra Felton, rented a duplex at 118 Silverage in Memphis where they resided with their son. However, in late January 2006, the couple separated and left the duplex, but they remained in contact and left all their belongings inside the residence. The two knew the defendant "from around the neighborhood" and had previously hired him to do some repair work on a wall inside the home.

On February 9, 2006, Victim Felton asked Victim White to accompany her to the duplex to check on their belongings. As the two arrived at the residence, they immediately noticed that the curtains in the window had been changed. Victim White approached the front door while Victim Felton remained in the car. As Victim White approached the front door, he observed that it had been kicked in and was damaged. He attempted to push it open but was unable to do so because it was blocked. Victim White then went to the side door of the duplex and entered, immediately noticing that there was a "big hole in the kitchen" wall leading to the vacant duplex unit next door and "a lot of trash and things" scattered inside.

As Victim White was entering their duplex, Victim Felton, still in the car, saw the defendant exit the front door of the adjacent duplex carrying a bag and a miniature boom box, which she recognized as her own. Upon exiting, the defendant immediately began running. Victim Felton began honking the car horn, and, when Victim White returned "seconds" later, she informed him, "there he is." Victim White then began chasing the defendant, whom he immediately recognized, through the neighborhood and caught him on the next street. According to Victim White, the defendant raised his hands like he intended to fight, and Victim White hit him. Victim Felton, who had called the police from her cell phone, arrived in the car and saw the defendant hitting Victim White. She grabbed a hockey stick from her car and proceeded to hit the defendant with it. Victim White took the stick from Victim Felton and also hit the defendant. According to Victim White, the defendant continued to resist and ran on three separate occasions, but they were able to catch him each time and eventually subdued him until police arrived. Police arrived on the scene to find the defendant bleeding severely from head wounds, and he was transported to The Med.

The victims went to the police station, and Victim White identified, from a photograph, the defendant as the one who had broken into the duplex. Upon their return to the duplex, the victims noted that several items were missing and that the duplex was full of trash, as if someone had been living there. The furniture in the living room had been piled against the front door. The bedroom suite, which included a headboard, footboard, rails, and a night stand, was missing. According to Victim Felton, she had purchased the suite for $500. Also missing was a wall heater, which they were charged $100 of their security deposit to replace, and a bookcase valued at $50. Two rings were also taken, one of which was recovered from the defendant while at The Med. The missing ring was worth $75 or $80 dollars. In the bedroom, the victims found clothes which they recognized as belonging to the defendant.

After the defendant was released from The Med, he went to his sister's house to recuperate. Police went to the home of the defendant's sister, informed him that his home on Pennsylvania had been burglarized, and transported him to 201 Poplar in order to identify a suspect in the burglary. After identifying the suspect, the defendant was then questioned and arrested in connection with the instant burglary. He gave an oral statement, admitting possession of the rings recovered in his pockets at The Med. However, in the followup written statement, the defendant denied knowledge of or participation in the burglary. At trial, the defendant testified and again denied involvement. In fact, he testified that he had never been in the duplex to work and that he did not know the victims. According to the defendant, he was simply walking down the street when he heard someone

yell, "Hey, you, yeah, you the one, you did it." He stated that he looked back, saw the victims running toward him, and saw a pair of hedge shears in the hand of Victim White. The defendant testified that he ran until he had to stop and catch his breath. According to the defendant, the next thing he remembered was waking up in The Med.

The defendant was indicted by a Shelby County grand jury for aggravated burglary and theft of property over $500. Following a jury trial, he was convicted of aggravated burglary and the lesser offense of theft of property under $500. He was subsequently sentenced to concurrent sentences of fifteen years and eleven months, twenty-nine days. Following the denial of his motion for new trial, the defendant filed a timely notice of appeal.

**Analysis**

On appeal, the defendant has raised two issues for our review. First, he contends that the evidence is insufficient to support the conviction for aggravated burglary beyond a reasonable doubt. He further contends that the trial court erred by allowing the defendant to be impeached with prior convictions for aggravated burglary and misdemeanor theft of services.

## I. Sufficiency of the Evidence

We apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given to the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d 832 at 835.

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). A jury

conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A person commits aggravated burglary who, without the effective consent of the property owner, enters a habitation and commits or attempts to commit, as relevant here, a theft. T.C.A. § 39-14-402(a), -403(a) (2006). Tennessee Code Annotated section 39-14-103 (2003) provides that, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006). It has previously been held that burglary may be established by circumstantial evidence and that the State is not required to offer a witness who saw the defendant break and enter into the burglarized premises. *Ramsey v. State*, 571 S.W.2d 822, 824 (Tenn. 1978); *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

The defendant, though conceding that there is some evidence to support his conviction in light of the victims' testimony, argues that the proof is insufficient when properly viewed against the high standard enunciated in *Jackson v. Virginia* and Tennessee Rule of Appellate Procedure 13(e). Essentially, the defendant's argument is based upon his assertion that the State's witnesses were not credible. According to the defendant, "[t]he proof reflected no agreement as to the facts except for [the defendant's] assertion that he had not been inside the duplex, and the admission by both [victims] that they had not seen [the defendant] inside their duplex." Moreover, he relies upon inconsistencies in the victims' testimony to support his argument. Specifically, he notes the discrepancy in the testimony of the victims with regard to what the defendant was carrying when he exited the premises, that these items were not found despite the fact that Victim White claimed to have never lost sight of the defendant during the chase, that the victims downplayed the viciousness of their attack on the defendant, and that it was illogical for the defendant to have been living in the duplex when he had his own home.

We note at this juncture that the scope of our examination of the evidence is not equivalent to that of the jury's. Again, in a challenge to the sufficiency of the evidence, this court does not retry the defendant. Our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are "entrusted exclusively to the jury as the triers of fact." *State v. Oody*, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). In this case, we acknowledge that some minor inconsistencies did appear in the testimony of the witnesses; however, those inconsistencies were placed before the jury. The jury obviously rejected the defendant's testimony at trial and accredited the testimony of the State's witnesses, as evidenced by its finding of guilt.

In the light most favorable to the State, the proof at trial overwhelmingly supports the jury's verdict. The evidence established that the defendant was seen exiting the adjacent duplex by Victim

Felton at the same time Victim White was attempting to enter their apartment. The defendant was carrying property which belonged to the victims when he exited. He immediately began running upon his exit from the duplex and continued to run until caught by Victim White. Inside the victims' duplex, a large hole had been cut in the wall connecting the adjacent duplex, and several items were missing. Moreover, clothes identified as the defendant's were found in the victim's duplex. Finally, the defendant himself made an oral statement to police that the rings recovered at The Med had come from his pocket. One of those rings belonged to Victim Felton. These facts are sufficient to allow a rational trier of fact to have found the defendant guilty of aggravated burglary beyond a reasonable doubt. Though not challenged by the defendant, we would also note that the facts presented were also sufficient to support the conviction for theft of property under $500.

## II. Use of Prior Convictions for Impeachment

Next, the defendant contends that the trial court erred in allowing the State to use prior convictions for aggravated burglary and misdemeanor theft of services for impeachment purposes. The general rule is that, in a criminal case, prior convictions can be used to impeach the credibility of the accused who takes the stand in his own defense. Tenn. R. Evid. 609. However, before the State is permitted to impeach an accused's credibility, certain conditions and procedures must be satisfied. The prior convictions must be for a crime punishable by incarceration in excess of one year or for a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2); *see also State v. Blanton*, 926 S.W.2d 953, 959 (Tenn. Crim. App. 1996). A trial court's determination under Rule 609 will not be reversed unless it appears from the record that the court abused its discretion. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003); *State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Waller*, 118 S.W.3d at 371.

On appeal, the defendant contends that allowing the State to impeach him with the two prior convictions, which were the same as the charged crimes in the instant case, was error because the probative value did not substantially outweigh the prejudicial effect. According to the defendant, the case essentially turned on the credibility of the witnesses, as the proof was not overwhelming, and allowing the use of the same type of convictions as the charges on trial for impeachment purposes more probably than not affected the verdict.

Two criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility and (2) the impeaching conviction's similarity to the charged offense. *Waller*, 118 S.W.3d at 371 (citing *Mixon*, 983 S.W.2d at 674). A trial court should first analyze whether the impeaching conviction is relevant to the issue of credibility. *Id.* Rule 609 suggests that the commission of any felony is "generally probative" of a criminal defendant's credibility. *Id.* (citing *State v. Walker*, 29 S.W.3d 885, 890 (Tenn. Crim. App. 1999)). However, our supreme court has previously rejected a *per se* rule that permits impeachment by any and all felony convictions. *Id.* Second, the court must consider that, when an impeaching

conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that a juror will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that, because the defendant committed a similar offense, he or she is probably guilty of the offense charged. *Mixon*, 983 S.W.2d at 674. Accordingly, the unfair prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried. *Id.* A prior felony conviction must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issue of the case. *Id.*

As noted by the State, the appellate courts of this state have previously held that the offenses of burglary and theft are crimes involving dishonesty and are "highly probative of credibility." *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); *see also State v. Crank*, 721 S.W.2d 264, 266-67 (Tenn. 1986); *State v. Tune*, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993). Moreover, "the fact that a prior conviction involves a similar crime for which the defendant is being tried does not automatically require its exclusion." *State v. Blevins*, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997).

In reaching its conclusion on this issue, the trial noted that the two prior convictions which the State sought to rely upon for impeachment purposes were "for the same offenses which the defendant is on trial[,] [a]nd normally speaking, the Court would be inclined not to allow those convictions in simply because they are of the same nature." The court went on to state, however, that both crimes had repeatedly been found to be crimes which involved dishonesty and "would definitely go to the credibility of a witness sought to be impeached." The court then noted that, based upon the opening statements of the parties, the credibility of both the victims and the defendant would be major issues in the case. As such, the court then had to make a determination of the probative value versus the prejudicial effect of allowing the prior convictions to be used. In doing so, the court stated as follows:

> [T]he concern I have is even in light of everything else just a general analysis, the interest of justice being, you know, seeking the truth, I have a great deal of concern for the fact that [the defendant] has frankly a lengthy history of offenses that involve dishonesty. Those would be attempted burglaries back in 1980, burglary in 1988, robbery, aggravated robbery in 1992 and 1993, aggravated burglary in 1995, theft of property in 2005. All of those offenses involve dishonesty.

> And for the defendant to be allowed to take the witness stand and testify unimpeached as if he has no prior record that would go to attack his credibility for truthfulness when in fact he has three, four, five, six, seven prior convictions which would go to his reputation for ability to speak the truth, the interest of justice would seem to cry out that that would not be a proper determination. However, it is going to be prejudicial to [the defendant] if the State is allowed to impeach him with a prior aggravated burglary and a theft of property and the State has conceded that the other convictions are too old, and they're not going to attempt to get those in.

But this Court is of the opinion that especially in the case that's going to involve strictly a credibility issue as to the victim's word versus the defendant's word, that the probative value to the State of Tennessee in being able to attempt to impeach the word of the defendant substantially outweighs any prejudicial effect that it may have to the defendant, obviously if the Court allows this, the Court will give curative instructions to the jury on how they are to utilize these prior convictions.

Based upon a reading of the trial court's findings, it is clear that the court correctly determined that the two prior convictions were extremely probative of the defendant's credibility, a major issue in the case. *See Baker*, 956 S.W.2d at 15. Noting that the prior convictions involved crimes of dishonesty, the court then proceeded to perform the necessary balancing test, noting the similarity in the prior convictions, but concluding "that the interest of justice would seem to cry out" for a true determination of the defendant's credibility. As such, the court concluded that the resulting prejudicial effect was outweighed by the probative value. Because the record reveals that the trial court carefully weighed the probative value versus the prejudicial effect, we conclude that the court did not abuse its discretion in deeming these convictions admissible for impeachment purposes.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE